1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALBERT BREITWIESER,                  No.  2:21-cv-00568-DJC-KJN

12                Plaintiff,

13        v.                              ORDER

14   VAIL CORPORATION,

15                Defendant.

16

17        Plaintiff Albert Breitwieser brought the present action under the Employee

18   Retirement Income Security Act ("ERISA") based on a denial of health care benefits by

19   Defendant Vail Corporation.  Presently before the Court is Defendant's Motion for

20   Summary Judgment.  (ECF No. 14).

21        For the reasons stated below, Defendant's Motion for Summary Judgment is

22   GRANTED.

23                              **BACKGROUND**

24        This case concerns a head injury that Plaintiff Breitwieser suffered in his home,

25   which required that he seek care in the emergency room.  The Plaintiff is employed by

26   Defendant Vail Corporation, which provides health insurance to the Plaintiff.  Vail,

27   through the plan administrator UMR, Inc., refused to pay for most of the emergency

28   care Plaintiff received on the basis that he was intoxicated at the time of the injury.

                                    1

This denial was allegedly made through an exclusion in Defendant's policy for any injury that "occurs while the Covered Person is under the influence of an intoxicant or has a blood alcohol level that would meet or exceed the definition of intoxication as set forth in the state where the Illness, Injury or Accident occurred." (Administrative R., ECF No. 13 at 103.)  In his complaint, Plaintiff seeks recovery of the costs of his medical care and other expenses on the basis that the Defendant breached its obligation under the health plan by denying Plaintiff's claims, and that it acted arbitrarily in applying the alcohol exclusion.

Defendant now moves for Summary Judgment under Federal Rule of Civil Procedure 56. (Def.'s Mot. (ECF No. 14-1) at 9.)  Defendant claims that it did not abuse its discretion in denying Plaintiff's coverage claims as Plaintiff's benefit plan included an intoxication exclusion and Plaintiff was intoxicated at the time of the injury. (*Id.* at 11.)  Defendant also argues that California Insurance Code Section 10369.12 is inapplicable as it is preempted by ERISA and that "Vail Corp. and UMR's Financial Interests did Not Affect the Coverage Determination." (*Id.* at 14–16.)

Plaintiff argues that Defendant's motion is improper as a Rule 52 hearing has already been scheduled. (Pl.'s Opp'n at 8.)  Plaintiff also contends that Defendant has the burden of proof to show that the denial of benefits was proper given that it was based on an exclusion. (*Id.* at 12–13.)  Finally, Plaintiff argues that the denial of benefits was arbitrary as Defendant failed to conduct "a full and fair review, including a correct definition of intoxication. . . ." (*Id.* at 17–23.)  For the reasons set forth below, the Court GRANTS the Motion for Summary Judgment.

## I.   Undisputed Facts

The material facts are undisputed and are taken from the Defendant's Statement of Undisputed Facts (("DSUF") (ECF No. 14-3)) and the Administrative Record (Administrative R. (ECF No. 13)).[1]  (*See* Pl's Statement of Undisputed Facts

---

[1] In deciding the motion for summary judgment in an ERISA action, the Court may rely only on the Administrative Record.  *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009).  However, the

1   (ECF No. 16-1) (admitting all of Defendant's Undisputed Facts); *see also* Pl's Opp'n at

2   9 ("[T]he contents of the Administrative Record are not disputed by either party."))

3        On August 2, 2020, Plaintiff sustained injuries in his home after he fell in the

4   bathroom and received a laceration above his left eye.  (DSUF ¶¶ 10, 12, 20;

5   Administrative R. at 139.)  He obtained treatment for these injuries at Barton Memorial

6   Hospital on August 3, 2020.  (DSUF ¶ 11.; Administrative R. at 135.)  Plaintiff's medical

7   record contained notes from Lars D. Ensign, M.D. as the treating physician that

8   identified that Plaintiff had a .19% blood alcohol content ("BAC"), that he was drinking

9   "a large amount of alcohol" prior to his injury, that the injury was likely caused by

10   "alcohol intoxication", and that Plaintiff was suffering from "alcohol intoxication with

11   complication".  (DSUF ¶ 12.; Administrative R. at 139–46.)

12        At the time of Plaintiff's injury, he was an employee of Defendant, The Vail

13   Corporation, and was a "Covered Person" under The Vail Resorts Medical Program

14   ("the Plan").  (DSUF ¶13; Administrative R. at 185.)  The Plan is a self-funded benefit

15   plan for employees that is established and maintained by the Defendant.  (DSUF ¶ 2;

16   Administrative R. at 4.)  Defendant was the administrator for the Plan and UMR acted

17   as a third-party administrator on Defendant's behalf.  (DSUF ¶¶ 13, 14; Administrative

18   R. at 4.)   The Plan provides Defendant with discretionary authority to interpret plan

19   descriptions as well as "make all interpretive and factual determinations as to whether

20   any individual is entitled to receive any benefit . . . ."  (DSUF ¶ 9; Administrative R. at

21   5.)  The Plan includes an Intoxication Exclusion that applies when a covered person is

22   "under the influence of an intoxicant or has a blood alcohol level that would meet or

23   exceed the definition of intoxication" when an injury occurs.  (DSUF ¶ 8; Administrative

24   R. at 103.)

25        Plaintiff submitted claims related to the accident and subsequent medical

26   services provided on August 3, 2020.  (DSUF ¶ 14–18; Administrative R. at 185.)  UMR

27

28   Court may consider information outside the Administrative Record, applying the traditional rules of summary judgment, "to determine the precise contours of the abuse of discretion standard . . . ."  *Id.*

reviewed these claims but found that the Intoxication Exclusion applied and denied them.[2] (DSUF ¶¶ 21–22; Administrative R. at 185.)  Plaintiff sent a letter appealing this decision on November 13, 2020.  (DSUF ¶ 23; Administrative R. at 161–64.)  Before deciding the appeal, UMR referred the original denial of benefits to Mark Kubina, M.D. of the Medical Review Institute of America for an independent review of the denial of benefits.  (DSUF ¶ 24; Administrative R. at 196–99.)  Dr. Kubina determined the Intoxication Exclusion was appropriately applied and thus the denial of benefits was appropriate, and UMR denied the appeal.  (DSUF ¶ 24–25; Administrative R. at 197. 200–203)  The denial letter informed Plaintiff of his right to a second level appeal as well as further external independent review.  (DSUF ¶ 25; Administrative R. at 201.)

Plaintiff submitted a second level appeal that was reviewed directly by Defendant's benefits manager, Evan Twombly.  (DSUF ¶¶ 26–27; Administrative R. at 247–54.)  Twombly requested a review by Robert 'Neal' Mills, M.D., M.B.A., who determined that the denial of benefits was appropriate.  (DSUF ¶¶ 28–29; Administrative R. at 252–54.)  Plaintiff's appeal was ultimately denied based on a finding that the Intoxication Exclusion was appropriately applied based on a review of Plaintiff's medical records, Plaintiff's appeal letters, the review by Dr. Mills, the external review by Dr. Kubina, and the Plan's language.  (DSUF ¶¶ 30–33; Administrative R. at 247–50.)

## II.    Rule 56 Motion is Proper

Before reaching the merits of Defendant's motion, the Court must first address Plaintiff's argument that the present motion is improper.  (*See* Pl.'s Opp'n at 7.)  Plaintiff contends that a Motion of Summary Judgment is improper as this action is governed by ERISA and thus a hearing conducted under Federal Rule of Civil Procedure 52 is more appropriate.  (*Id.* at 7.)  The only basis for this claim appears to be the Ninth Circuit's decision in *Nolan v. Heald College*, 551 F.3d 1148 (9th Cir.

---

[2] Based on the stated facts in the DSUF, it appears UMR approved one of Plaintiff's three claims.  (*See* DSUF ¶ 19.)  However, this does not appear material to the present motion.

2009).  Plaintiff's central contention appears to be that a summary judgment motion is "unorthodox" and "will cause duplicative and unnecessary work for the court and both parties . . . ."  (*Id.* at 1–2.)  Plaintiff's only legal basis for suggesting that the present motion should be denied as improper is the *Nolan* decision.  (*See id.* at 8–11.)

In *Nolan*, the Ninth Circuit considered a ruling by the district court dismissing an ERISA action on summary judgment.  551 F.3d at 1150.  The circuit court agreed with the district court's decision to consider evidence outside the administrative record to determine if the defendant had a conflict of interest and determine "the precise contours of the abuse of discretion standard" for the specific case.  *Id.* at 1154.  However, the Ninth Circuit found that the district court failed to properly consider this information "through the lens of the traditional rules of summary judgment" by failing to view the evidence of a conflict of interest in the light most favorable to the non-moving party.  *Id.* at 1154–55.

Nothing in the *Nolan* decision prevents this Court from considering a Rule 56 motion or makes such a motion improper when a Rule 52 hearing is scheduled.  In fact, in remanding back to the district court, the Ninth Circuit in *Nolan* even expressly stated that the district court's grant of summary judgment might remain appropriate if the district court determined that the evidence of bias was not material.  *Id.* at 1155–56.  Moreover, several district courts in this circuit have held that a Rule 56 motion is more appropriate than a bench trial under Rule 52 when the court is reviewing under an abuse of discretion standard.  *See Gallupe v. Sedgwick Claims Management Services Inc.*, 358 F.Supp.3d 1183, 1190 (W.D. Wash. Feb 14, 2019) ("[W]here review is for abuse of discretion, it appears that Rule 56 is the appropriate 'conduit to bring the legal question before the district court.'") (citing *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 706 (9th Cir. 2012)); *Rabbat v. Standard Ins. Co.*, 894 F.Supp.2d 1311, 1313 (D. Or. 2012) ("[W]here the court's review is for abuse of discretion, summary judgment is a proper 'conduit to bring the legal question before the district court.'"); *Yox v. Providence Health Plan*, No. 3:12-cv-01348-HZ, 2013 WL 6887530, at *3 (D. Or.

1    Dec. 31, 2013) (same).  Both parties agree that an abuse of discretion standard is
2    appropriate in this case.  (Pl.'s Opp'n at 3; Def.'s Mot. at 10.)

3          Accordingly, Plaintiff's Rule 56 Motion for Summary Judgment is appropriate
4    and even preferable in these circumstances.

5    **III.    Standard of Review**

6          "Where an ERISA plan confers discretionary authority upon a plan administrator
7    to determine eligibility for benefits, we generally review the administrator's decision
8    to deny benefits for an abuse of discretion."  *Nolan*, 551 F.3d at 1153.  As stated
9    above, both parties agree that an abuse of discretion standard applies to the present
10   action.  (Def.'s Mot. at 10; Pl.'s Opp'n at 3.)  This is appropriate here as the Plan clearly
11   confers discretionary authority to determine eligibility for benefits to Defendant, as the
12   Plan administrator.  (Administrative R. (ECF No. 13) at 6.)

13         If a plan is operated in a manner that raises the specter of a conflict of interest,
14   however, the Court must temper the abuse of discretion standard with skepticism.
15   *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006).  A conflict of
16   interest arises when "[an] entity that administers the plan . . . both determines whether
17   an employee is eligible for benefits and pays benefits out of its own pocket . . ."
18   *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).  Similarly, the financial
19   interests of another party involved in the benefits review process creates the
20   possibility of a structural conflict of interest warranting skepticism.  *Demer v. IBM*
21   *Corporation LTD Plan*, 835 F.3d 893, 901–02 (9th Cir. 2016).  This is because "the
22   number of examinations referred and the size of the professional fees paid to a
23   reviewer may compromise the neutrality of an [outside] expert."  *Id.* at 904.

24         The degree of skepticism applied by the Court must be based on the severity of
25   the conflict and the circumstances surrounding it.  *Id.* at 968-69; *Nolan*, 551 F.3d at
26   1153 (". . .a court is required to consider the conflict whenever it exists, and to temper
27   the abuse of discretion standard with skepticism "commensurate" with the
28   conflict. . .").  This includes whether there is "evidence of 'malice, of self-dealing, or of

1    a parsimonious claims-granting history'" or "evidence that the administrator has given

2    'inconsistent reasons for denial,' has failed 'adequately to investigate a claim or ask the

3    plaintiff for necessary evidence,' or has 'repeatedly denied benefits to deserving

4    participants by interpreting plan terms incorrectly.'" *Saffon v. Wells Fargo & Co. Long*

5    *Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008) (citations omitted).  When

6    determining what level of skepticism is appropriate, the court may consider evidence

7    outside the administrative record.  *Nolan*, 551 F.3d at 1154.  In considering evidence

8    outside the administrative record, the Court must utilize the traditional rules of

9    summary judgment, including viewing the evidence in the light most favorable to the

10    non-moving party. *Id.* at 1154-55.

11        When an abuse of discretion standard is applied where there exists a conflict of

12    interests, the court must perform a more complex analysis than simply determining if a

13    decision is grounded in any reasonable basis.  *Montour v. Hartford Life & Acc. Ins. Co.*,

14    588 F.3d 623, 629-30 (9th Cir. 2009).  The court's decision must be based on a

15    consideration of case-specific factors in reaching a decision.  *Id.* at 630; *see Glenn*,

16    554 U.S. at 117 ("[W]hen judges review the lawfulness of benefit denials, they will

17    often take account of several different considerations of which a conflict of interest is

18    one.").  The existence of a conflict of interests is one factor to be weighed along with

19    other factors such as "the quality and quantity of the medical evidence, whether the

20    plan administrator subjected the claimant to an in-person medical evaluation or relied

21    instead on a paper review of the claimant's existing medical records, whether the

22    administrator provided its independent experts 'with all of the relevant evidence[.]'"

23    *Montour*, 588 F.3d at 630.  The conflict of interest "should prove less important

24    (perhaps to the vanishing point) where the administrator has taken active steps to

25    reduce potential bias and to promote accuracy, for example, by walling off claims

26    administrators from those interested in firm finances, or by imposing management

27    checks that penalize inaccurate decision making irrespective of whom the inaccuracy

28    benefits."  *Glenn*, 554 U.S. at 117.

1    **IV.    Insurance Code Section 10369.12**

2         In Plaintiff's Complaint, he argued that the Intoxication Exclusion could not be

3    applied as California Insurance Code § 10369.12 banned the usage of alcohol

4    exclusions in health insurance plans that do not conform with that provision.  (Compl.

5    at 3.)  In their motion, Defendant argued that this section is preempted by ERISA

6    which explicitly supersedes state laws related to employee benefit plans effected by

7    ERISA.  (Def.'s Mot. at 15–16;) *see* 29 U.S.C. § 1144.  Plaintiff's opposition does not

8    argue this point.  (*See* Pl.'s Opp'n.)  Though it appears Plaintiff is no longer concerned

9    with arguing this issue, the Court must first decide this issue before turning to the

10   issue of whether Defendant abused their discretion.

11        California Insurance Code § 10369.12 contains two subsections.  The first

12   provides approved language for an intoxicant and controlled substances exclusion.

13   Cal. Ins. Code § 10369.12(a).  Pursuant to California Insurance Code § 10369.1, an

14   insurance provider may only include an intoxication exclusion if it is identical to the

15   language in § 10369.12 or the provision "is not less favorable in any respect to the

16   insured or the beneficiary" than the provided language.  However,  the second

17   subsection of § 10369.12 specifies that the first subsection "shall not apply to a health

18   insurance policy."  Cal. Ins. Code § 10369.12(b).  This second subsection plainly

19   makes § 10369.12(a) and its limitation on intoxication exclusions inapplicable to the

20   present action.

21        Moreover, ERISA contains a broad preemption provision stating that "the

22   provisions of this subchapter and subchapter III shall supersede any and all State laws

23   insofar as they may now or hereafter relate to any employee benefit plan described in

24   section 1003(a) of this title and not exempt under section 1003(b) of this title."  29

25   U.S.C. § 1144(a).  The ERISA statute also contains a so-called "savings clause" which

26   relieves state laws regulating insurance, banking, and securities from the preemption

27   provision.  29 U.S.C. § 1144(b)(2)(A).  However, this same savings clause expressly

28   provides that employee benefit plans are not to be considered "an insurance

1   company or other insurer, bank, trust company, or investment company or to be

2   engaged in the business of insurance or banking for purposes of any law of any State

3   purporting to regulate insurance companies, insurance contracts, banks, trust

4   companies, or investment companies."  29 U.S.C. § 1144(b)(2)(B).

5          Given that the health plan at issue in the present action is an employee benefit

6   plan established and maintained by an employer engaged in commerce, 29 U.S.C.

7   § 1003(a), the ERISA savings clause does not apply as Defendant is not to be

8   considered an insurance company for purposes of state regulation.  *See* 29 U.S.C.

9   § 1144(b)(2)(B).  Thus, even if § 10369.12(b) does not apply to the present action, the

10  preemption clause still applies and California Insurance Code § 10369.12(a) is

11  preempted by ERISA in this instance.  *See* 29 U.S.C. § 1144(a); *see also FMC Corp. v.*

12  *Holliday*, 498 U.S. 52, 61 (1990) ("We read the deemer clause to exempt self-funded

13  ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the saving

14  clause.")

15      **V.    Case-Specific Factors**

16          **A. Conflict of Interest**

17          Before turning to the larger question of whether Defendant abused their

18  discretion in denying Plaintiff's benefits claim, the Court will first consider and weigh

19  the case-specific factors.  *Montour*, 588 F.3d at 630.  The first of these is the existence

20  and impact of Defendant's conflicts of interest, and the amount of skepticism to apply

21  given those conflicts.

22          Here, Plaintiff has alleged that a conflict of interest existed as Defendant paid a

23  third-party administrator, UMR, to administer the Plan and UMR was the sole decision

24  maker on initial health benefit payments.  (Pl's Opp'n at 12.)  Plaintiff claims that as a

25  result of this arraignment, UMR both had a financial incentive to deny benefits in order

26  to maintain a business relationship with Defendant.  (*Id.*)  Defendant does not contest

27  that a structural conflict of interests does exist between UMR, as the third-party Plan's

28  administrator, and Defendant.  (*See e.g.*, Def. Reply at 9–10 (recognizing that UMR had

1  a financial interest but arguing that Defendant took steps to lessen the impact of any

2  conflict of interest).)  However, Defendant argues that they "took steps to ensure that

3  UMR's coverage decisions were accurate by requiring audits, imposing financial

4  penalties, requiring appeals to be handled by separate persons, and requiring UMR to

5  obtain opinions of independent medical providers." (Def.'s Reply at 9–10; Def.'s Mot.

6  at 15.)

7          Viewing the information before the Court in the light most favorable to the

8  Plaintiff, it appears there exists a structural conflict of interest present in the

9  administration of the Plan at issue.  The Vail Resorts Medical Program under which

10  Plaintiff was covered is a self-funded plan.  (DSUF ¶2.)  Defendant is the administrator

11  for the Plan (Twombly Decl., Ex. A (ECF No. 14-5) at 11) and has "full and sole

12  discretionary authority to . . . make all interpretive and factual determinations as to

13  whether any individual is entitled to receive any benefit under the terms of this Plan"

14  (*id.* at 13).  Defendant delegates administration of medical claims to UMR, who

15  Defendant pays to administer the Plan as a third party.  (*Id.* at 11; Def.'s Reply at 9.)

16          In the denial of benefits at issue in this case, UMR was responsible for denying

17  the original claim (Administrative R. at 185) and Plaintiff's first appeal (*id.* at 200–203).

18  Defendant's benefits manager performed the final appeal review and upheld the

19  denial of benefits.  (*Id.* at 242.)  Given that Defendant both made the final appeal

20  determination and is also responsible for paying benefits, there exists a clear

21  structural conflict of interests present, particularly given that the Plan is self-funded.

22  Additionally, as Defendant appears to concede (*see* Def.'s Mot. at 14; Def.'s Reply at

23  9), UMR has a financial interest in maintaining a business relationship with Defendant.

24  Defendant argues that Plaintiff has not shown that this financial interest affected the

25  denial of Plaintiff's claims (Def.'s Mot. at 14–15) but, viewed in the light most favorable

26  to the Plaintiff, the information present is on its own is enough to show that structural

27  conflicts of interest exist, regardless of whether it impacted the present denial of

28  benefits.

1    Given the fact that there appear to be structural conflicts of interest present in

2  the denial of Plaintiff's benefits, the Court must apply an abuse of discretion standard

3  tempered with skepticism.  *Abatie*, 458 F.3d at 967.  However, it appears the amount

4  of skepticism warranted here is low.  *Saffon*, 522 F.3d at 868.  It is undisputed by the

5  parties that, in addition to other protections, UMR undergoes regular audits (DSUF

6  ¶ 6), financial penalties are imposed based on "financial accuracy, claim procedural

7  accuracy, claim payment accuracy, turnaround time and customer service[,]" (*id.*), and

8  that the denial of Plaintiff's benefits was subject to independent review (DSUF ¶ 24).

9  Conversely, neither party has alleged or presented any facts establishing that

10  Defendant's past actions warrant a higher degree of level of skepticism.  *See Saffon*,

11  522 F.3d at 868.

12    Moreover, the decision here was not one that involved a complex and

13  subjective judgment call or a difficult medical decision.  In these closer cases, the

14  complexity of a benefits decision could in effect "shield" a decision actually rooted in a

15  conflict of interest and provide a greater draw for administrators to find ways to deny

16  such claims.  *See, e.g., Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 678

17  (9th Cir. 2011) (noting that where a conflict of interests is present, there is a greater

18  temptation and opportunity for plan administrators to "cheat" and deny cases when

19  they involve complex and subjective diseases); *Chellino v. Kaiser Foundation Health*

20  *Plan, Inc.*, 352 Fed. Appx. 164, 166–67 (9th Cir. 2009) (considering the impact of a

21  conflict of interests on a denial of benefits for fibromyalgia which was a diagnosis the

22  Court noted was not subject to objective tests); *Sterio v. HM Life*, 369 Fed. Appx. 801,

23  805 (9th Cir. 2010) (addressing a denial of benefits where the administrator failed to

24  acknowledge prior osteoarthritis diagnosis).  In this case, however, the application of

25  the Intoxication Exclusion is straightforward and the medical record is not particularly

26  nuanced or unclear, such that if the decision here were motivated by a conflict of

27  interest, that motivation would be readily apparent.  Defendant and UMR were given

28  persuasive evidence that Plaintiff was under the influence at the time of the injury,

11

1    including a BAC of .19% and Plaintiff's doctor's impressions that Plaintiff was

2    intoxicated, and did not discount alternative medical evidence that he was not

3    intoxicated. (Administrative R. at 137–46.)  Defendant and UMR did not need to

4    exercise judgment or discretion, instead simply relying on the objective tests and

5    information before them.  This makes the determination in the present case highly

6    distinct from other situations that raise the specter of a conflict influencing a final

7    benefits decision.

8         Further supporting application of a low level of skepticism, there was no

9    alternative evidence or medical opinion that Defendant or UMR ignored in making

10   their determination and there is little ambiguity in the facts in the record.  (*See*

11   Administrative R.)  Plaintiff has also not shown, or even argued, that Defendant has a

12   history or pattern of activity which might raise questions regarding the impact of their

13   conflict of interest.  *See Stephan*, 697 F.3d 917, 930 (stating that the court should

14   consider a defendant's "history of biased decisionmaking; any evidence that its

15   decisionmaking was biased in this case . . .; as well as any evidence that [defendant]

16   took steps to reduce the potential impact of a conflict of interest, either in general or

17   in this case.").

18        Given these facts, the actual impact of the structural conflict under which

19   Defendant operates on the denial of Plaintiff's benefits is negligible, meeting the

20   "vanishing point" of importance noted in *Glenn*.  554 U.S. at 117  ("[The conflict]

21   should prove less important (perhaps to the vanishing point) where the administrator

22   has taken active steps to reduce potential bias and to promote accuracy[.]")

23   Accordingly, the Court will apply an abuse of discretion standard tempered with a low

24   level of additional skepticism.  *Abatie*, 458 F.3d at 968-69; *Nolan*, 551 F.3d at 1153.

25        **B.  Quality and Quantity of Medical Evidence**

26        Plaintiff argues that there was not a "full and fair review" of his claim as

27   Defendant did not take statements from eyewitnesses, examine the conditions of the

28   floors where Plaintiff fell, or perform other investigations such as inquiring what shoes

1   Plaintiff was wearing.  (Pl.'s Opp'n at 16-17.)  None of these purported failures appear

2   to be related to Plaintiff's medical records but investigation of the incident which

3   injured Plaintiff.  Further, none of this information was necessary for UMR and the

4   Defendant to make the reasonable decision to apply the Intoxication Exclusion as they

5   had received both a numerical test indicating Plaintiff's intoxication (Administrative R.

6   at 143) as well as the observations of Plaintiff's physician that Plaintiff was intoxicated

7   (*id.* at 143–44).  While in a close case information from eyewitnesses could shed light

8   on whether or not an individual was in fact intoxicated, given the 0.19% BAC coupled

9   with Plaintiff's admission to medical professionals that "he had a lot to drink" on the

10  evening of the accident, (Administrative R. at 137) and his physician's determination

11  that he was intoxicated, the information Plaintiff argues should have been considered

12  would not have added much value.  As such, this factor does not hold weight towards

13  a finding that Defendant abused their discretion.

14          **C.  In-Person Evaluation or Paper Review of the Record**

15          Under the terms of the Plan, Defendant can "require that a Covered Person

16  have a physical examination, at the Plan's expense, as often as is necessary to settle a

17  claim." (*Id.* at 113.)  Defendant chose not to exercise this right and instead came to a

18  determination based solely on a paper review of the record. (*See* Administrative R.)

19          "ERISA . . . does not require that an insurer seek independent medical

20  examinations." *Kushner v. Lehigh Cement Co.*, 572 F.Supp.2d 1182, 1192 (C.D. Cal.

21  2008).  The lack of an in-person examination is "a relevant consideration, especially

22  with respect to conditions that are not susceptible to objective verification . . . ."

23  *Lavino v. Metro. Life Ins. Co.*, No. 08–cv–2910-SVW, 2010 WL 234817, at *12 (C.D. Cal.

24  Jan. 13, 2010); *see Hodge v. Hartford Life and Accident Ins. Co.*, 298 F.Supp.3d 1332,

25  1343 (D. Idaho Dec. 27, 2017).

26          The application of the Intoxication Exclusion was not a decision of high

27  complexity and could be determined with objective measurements and

28  contemporaneous observations.  *Compare Kushner*, 572 F.Supp.2d at 1192–93

13

1  (finding a denial of benefits was appropriate without an in-person medical

2  examination or testing and collecting cases that support this contention) *with*

3  *Sorensen v. Hartford Life and Accident Insurance Company*, No. 4:21-cv-00286, 2022

4  WL 2135811 at *9 (D. Idaho June 14, 2022) (finding a plan administrator had not

5  conducted a thorough and accurate benefits determination where an in-person

6  evaluation was not conducted and the covered individual had diagnoses "not easily

7  determined by reference to objective measurements").  Perhaps more importantly,

8  this is a unique situation where a determination would not be aided by an

9  independent in-person evaluation.  The exclusion is based on the intoxication of the

10  claimant at the time of the injury.  (*See id.*)  This is a condition that is inherently fleeting

11  as alcohol naturally dissipates from the blood.  *See generally*, *Mitchell v. Wisconsin*,

12  139 S.Ct. 2525, 2537 (2019) (discussing the constant dissipation of BAC).  By the time

13  an independent in-person evaluation could be conducted – even if it were as quickly

14  as just a day later – measures of intoxication would no longer be possible and

15  indicators that Plaintiff was under the influence of alcohol would no longer be present.

16      Given these facts, the decision to rely solely on a paper review of the record

17  when determining whether the Intoxication Exclusion applied holds little to no weight

18  as a factor.

19      **D. Independent Experts' Review**

20      Plaintiff's medical record was subject to independent review from Mark Kubina,

21  M.D. of the Medical Review Institute of America prior to UMR responding to Plaintiff's

22  first appeal.  (DSUF ¶24.)  This process was apparently initiated automatically by UMR

23  when Plaintiff appealed the initial denial of benefits.  (Administrative R. at 157.)  In a

24  letter dated December 5, 2020, Dr. Kubina stated the following:

25          Based on the submitted documentation and plan language,
26          the emergency room services and all related charges (CPT
            codes 99285-25, 12052, 71045-26, 93010-59, and 99053)
27          on date of service 08/03/20 are excluded as an injury related
            to intoxication as defined by the plan for this patient.
28

14

> The emergency room (ER) services and all related charges would be considered an exclusion due to the patient's alcohol intoxication. The evidence supports that the intoxication was significantly involved in regards to the patient's injuries. An injury that occurs while the covered person is intoxicated by alcohol is an exclusion for coverage per plan language.

(Administrative R. at 196–97.)

This is the only independent expert review that is apparent from the record before the Court.  On several occasions, Defendant also offered the option for additional external review upon request from Plaintiff (*see, e.g.*, Administrative R. at 165, 201, 250) but it does not appear Plaintiff made any such request.  In ultimately denying Plaintiff's request for coverage, UMR relied in part upon this independent expert review in denying Plaintiff's first level appeal (*see* Administrative R. at 157) and this appeal denial was relied on by Defendant in the final determination (*see* Administrative R. at 242.)

Under the evidence before the Court, every assessment by a physician – whether it was Plaintiff's physicians (Administrative R. at 143–44), physicians employed by Defendant (*id.* at 260–62), or the independent physicians brought in to review the benefits denial (*id.* at 196–97) – resulted in a determination that the denial of coverage was warranted as Plaintiff was intoxicated at the time of the incident.  Though no further independent review was conducted, it seems doubtful that further review would yield a different result.  This is consistent with the fact that Plaintiff elected not to seek further independent review despite it being repeatedly offered to him.  (*See id.* at 165, 201, 250.)

Given the above, this factor also weighs in favor of a finding that Defendant did not abuse their discretion in applying the Intoxication Exclusion and denying Plaintiff's benefits.

////

////

**E.  Weighing the Case-Specific Factors**

As discussed in the prior sections, none of the case-specific factors weigh in favor of finding that Defendant abused their discretion.  Despite the risks presented by Defendant's structural conflict of interest, the conflict does not appear to have had an actual impact on the present benefits determination.  *See supra* Discussion, Part V.A.  Plaintiff's claim denial was subject to independent neutral review and Plaintiff was offered opportunities for independent review.  *See supra* Discussion, Part V.D.  Additionally, the quality and quantity of medical evidence and the fact that the decision was based on a paper review also do not weigh towards a finding of abuse of discretion as discussed above.  *See supra* Discussion, Part V.B–C.

After considering these case-specific factors, even with the modest degree of skepticism warranted by the structural conflict of interest, the Court finds that none weigh in favor of finding Defendant abused their discretion in denying Plaintiff's benefits claim.  *See Montour*, 588 F.3d at 630; *Glenn*, 554 U.S. at 117.  There do not appear to be any factors beyond those discussed above that might lead to that conclusion.

**VI.   Whether Defendants Abused Their Discretion in Applying the Intoxication Exclusion**

As discussed above, there are no case-specific factors present that weigh toward a finding that Defendant's abused their discretion.  While the Court must still apply a modest degree of skepticism, the only remaining consideration is an analysis of whether Defendant abused their discretion.  *See Broyles v. A.U.L. Corp. Long-Term Disability Ins. Plan*, No. 07-cv-5305-MMC, 2009 WL 3817935, at *7 (N.D. Cal. Nov. 12, 2009) (applying a standard abuse of discretion analysis where a low degree of skepticism was applied and the conflict of interest was only structural), *aff'd*, 408 Fed. Appx. 67 (9th Cir. 2011); *see also Munn v. Hertz Long-Term Disability Plan*, 08-cv-1942-VRW-MEJ, 2010 WL 11492849, at *28 (N.D. Cal. Sept. 7, 2010) (where a structural conflict of interest had no effect on a decision to deny benefits, the conflict of interest

1    has no influence on the determination of whether Defendant abused their discretion).

2    The Court concludes there was no abuse of discretion.

3            Plaintiff's central argument is that Defendant's denial of Plaintiff's benefits was

4    arbitrary and capricious because Defendant "arbitraily [sic] decided with no

5    investigation that Plaintiff was 'legally' intoxicated" and thus applied the exclusion

6    without sufficient basis.  (Def.'s Opp'n at 14.)  The Intoxication Exclusion included in

7    the summary of benefits for the Vail Resorts Medical Program states the following:

8
9                    Injury that occurs while the Covered Person is under the
                     influence of an intoxicant or has a blood alcohol level that
10                   would meet or exceed the definition of intoxication as set
                     forth in the state where the Illness, Injury or Accident
11                   occurred. The Plan shall enforce this exclusion based upon
                     available reasonable information unless due to a medical
12                   condition (including both physical and mental health
                     conditions) or domestic violence.
13

14   (Administrative R. at 103.)

15           Defendant contends that the Intoxication Exclusion was properly applied as,

16   based on the information available, Plaintiff's injury occurred "while Plaintiff was under

17   the influence of the alcohol/intoxicated."  (Pl.'s Mot. at 13.)  In support, Defendant

18   points to: (1) Plaintiff's medical records stating that Plaintiff consumed a large quantity

19   of alcohol and that Plaintiff's blood alcohol content was .19 (*id.*); (2) The assessment of

20   Plaintiff's physicians that Plaintiff's fall was "likely related to alcohol intoxication" and

21   their initial impression included that Plaintiff's condition was "[a]lcoholic intoxication

22   with complication" (*id.*); (3) Plaintiff's affirmative response that alcohol was involved in

23   his injury and admission that he "had been enjoying legal libations" at the time of his

24   injury (*id.* at 14); and (4) The opinions of the doctors involved in the review of Plaintiff's

25   benefits claim who determined that the exclusion was appropriate as Plaintiff was

26   intoxicated (*id.*).

27           In this case, the letter denying Plaintiff's benefits claim states that the denial was

28   based on the intoxication exclusion.  (*Id.* at 185.)  Independent review of the denial of

                                                17

1    benefits found that Plaintiff was "intoxicated with an alcohol at a level of 0.19%" and

2    that "the preponderance of evidence supports the use of alcohol being directly

3    involved in regard to your injuries." (*Id.* at 196–97.)  In response to Plaintiff's appeal,

4    UMR relied on the same reasoning. (*Id.* at 200.)  The final appeal review similarly

5    relied on the prior review's finding that Plaintiff was "determined [to be] intoxicated

6    with an alcohol level of 0.19%" in finding that the application of the exclusion was

7    appropriate. (*Id.* at 242.)

8         Traditionally, "an ERISA administrator abuses its discretion only if it (1) renders a

9    decision without explanation, (2) construes provisions of the plan in a way that

10   conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings

11   of fact." *Boyd v. Bert Bell/Pete Rozelle N.F.L. Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir.

12   2005).  While the Court must still approach the consideration of abuse of discretion

13   with additional, though modest, skepticism due to the structural conflict of interest,

14   where, as here, there does not appear any indication that the conflict influenced

15   Defendant's decision, the abuse of discretion standard described in *Boyd* becomes

16   informative. *See Broyles*, 2009 WL 3817935, at *7, *aff'd*, 408 Fed. Appx. 67; *see also*

17   *Gray v. Comcast's Long Term Disability Ins. Plan*, No. 09-cv-03810-MEJ, 2010 WL

18   4977679, at *8-9 (N.D. Cal. Dec. 2, 201) (applying the *Boyd* standard where low

19   skepticism was warranted and a structural conflict of interest did not affect a

20   defendant's ultimate determination).

21        Based on the facts before UMR and Defendant, the denial of Plaintiff's claims

22   was reasonable.  UMR explained the basis for their decision was the application of the

23   Intoxication Exclusion. (*See* Administrative R. at 185.)  UMR and Defendant also

24   provided additional explanation by stating that the exclusion was applied based on a

25   "medical review of submitted clinical documentation and plan language[,]" in addition

26   to Plaintiff's BAC, leading to a finding that Plaintiff was intoxicated. (*Id.* at 200, 244.)

27   As such, there was a clear explanation provided for the decision. *See Boyd*, 410 F.3d

28   at 1178.

1    In coming to this conclusion, UMR and Defendant did not construe the Plan's

2    Intoxication Exclusion in a way that conflicted with the plain language of the Plan.

3    UMR and Defendant found that Plaintiff was intoxicated based on the medical records

4    before them.  Plaintiff's high blood alcohol content was notably high at .19%.  (*Id.* at

5    143.)  Plaintiff himself admitted he had a lot to drink, (*id*. at 137) and Plaintiff's

6    physician also determined that Plaintiff was intoxicated (*see* Administrative R. at 139

7    ("[P]atient was drinking a large amount of alcohol."); *see also id.* at 143 ("given his

8    alcohol intoxication"); *see also id.* at 139 ("Pt. disoriented to event"); *see also id.* at 144

9    ("IMPRESSION: 1. Alcoholic intoxication with complication")).  While at one point

10   Plaintiff's doctor noted that he did not "sound intoxicated," (*id*. at 145), the doctor

11   ultimately concluded "As for how the patient fell, I think this is most likely related to

12   alcohol intoxication . . ." (*Id*. at 147).  For UMR and Defendant to determine that

13   Plaintiff was intoxicated based on this evidence appears to fall squarely within the

14   portion of the Intoxication Exception which states the exception applies when the

15   Covered Person "is under the influence of an intoxicant" (*Id.* at 103.)  Thus, in denying

16   Plaintiff's claim, UMR and Defendant did not construe the Plan's provisions in a way

17   that would conflict with the plain language of the Plan.  *See Boyd*, 410 F.3d at 1178.

18   Finally, there is no indication that UMR or Defendant relied on erroneous

19   findings of fact.  All available evidence in the Administrative Record suggests Plaintiff

20   was intoxicated.  There is nothing that indicates this finding was clearly erroneous.

21   *See Boyd*, 410 F.3d at 1178.

22   The above facts, even viewed with the skepticism appropriate given the

23   structural conflict of interests, clearly support a finding that Defendant did not abuse

24   their discretion in applying the Intoxication Exclusion.  *Id*.  Given that there are not any

25   other factors that the Court must also weigh, *see supra* Discussion, Part V, the Court

26   finds that Defendant did not abuse their discretion in denying Plaintiff's health

27   insurance claims and grants Defendant's Motion for Summary Judgment.

28   *////*

1   **VII.   Lack of Causation Language**

2       Plaintiff's opposition makes references to a lack of a causal link between

3   Plaintiff's intoxication and his injury.  (*See* Pl.'s Opp'n at 16 ("any different number of

4   factors could have caused [Plaintiff's] fall independent of alcohol consumption . . . .");

5   *id.* at 17 ("It was the fall, not the alcohol, that caused the injury . . . .").)  Plaintiff also

6   cites cases involving intoxication exclusions but the exclusions at issue in these cases

7   include language requiring there be causation between the individuals' intoxication

8   and their injury.  (*See* Pl.'s Opp'n at 17–20 (citing *Ciberay v. L-3 Commc'ns Corp.*

9   *Master Life & Acc. Death & Dismemberment Ins. Plans*, No. 3:12-cv-1218-GPC-MDD,

10  2013 WL 2481539 (S.D. Cal. 2013) and *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189

11  (11th Cir. 2010).)

12      Importantly, the Intoxication Exclusion in The Vail Resorts Medical Program

13  does not include any causation requirement.  It only requires that "[the] injury that

14  occurred while the Covered Person is under the influence of an intoxicant[,]" not that

15  the injury was caused by the individual's intoxication.  (Administrative R. at 103.)  While

16  it is certainly surprising that Defendant would include an exclusion that effectively

17  removes healthcare coverage from any covered individual who is legally intoxicated,

18  the Court's determination is not altered by this fact.  As stated above, the standard of

19  review appropriate in this case is whether Defendant abused their discretion in

20  applying the terms of the health care plan.  The Court is not called to consider the

21  propriety of the Plan's terms.

22  ////

23  ////

24  ////

25  ////

26  ////

27  ////

28  ////

1

**CONCLUSION**

2     In accordance with the above and good cause appearing, IT IS HEREBY

3 ORDERED that:

4     1.  Defendant's Motion for Summary Judgment (ECF No. 14) is GRANTED.

5     2.  Defendant's Requests for Judicial Notice (ECF No. 14-2) are DENIED without

6         prejudice as moot.

7     3.  The Clerk of the Court shall enter judgment in Defendant's favor.

8     4.  The Clerk of the Court is directed to close this case.

9

10

11     IT IS SO ORDERED.

12 Dated:   **June 5, 2023**

Hon. Daniel J. Calabretta
13                                                UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21 DJC1 – breitwieser2100568.msj

22

23

24

25

26

27

28

21